**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MAXUS ENERGY CORPORATION, *et al.*, | Case No. 16-11501 (CSS) |
| Debtors. | Jointly Administered |
| MAXUS LIQUIDATING TRUST, | |
| Plaintiff, | |
| v. | Adversary Proceeding |
| YPF S.A., YPF INTERNATIONAL S.A., YPF HOLDINGS, INC., CLH HOLDINGS, INC., REPSOL, S.A., REPSOL EXPLORACIÓN, S.A., REPSOL USA HOLDINGS CORP., REPSOL E&P USA, INC., REPSOL OFFSHORE E&P USA, INC., REPSOL E&P T&T LIMITED, and REPSOL SERVICES CO., | Adv. Proc. No. 18-50489 (CSS) |
| Defendants. | |

**REPSOL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
<u>WITHDRAWAL OF THE REFERENCE</u>**

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
Robert J. Dehney
Curtis S. Miller
Daniel B. Butz
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 351-9412
Facsimile:  (302) 425-3080

WEIL, GOTSHAL & MANGES LLP
Edward Soto
Robert Lemons
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Counsel for the Repsol Defendants*

Dated: June 7, 2019

## TABLE OF CONTENTS

Page

I.     NATURE AND STAGE OF THE PROCEEDINGS .......................................................... 2

II.    SUMMARY OF ARGUMENTS ................................................................................ 3

III.   LOCAL RULE 7008-1 STATEMENT ...................................................................... 4

IV.    STATEMENT OF FACTS ....................................................................................... 5

V.     ARGUMENTS AND AUTHORITIES ........................................................................ 8

       A.     Standard for Withdrawing the Reference ............................................. 8

       B.     Because Repsol Has Demanded a Jury Trial and Does Not
              Consent to the Bankruptcy Court Conducting a Jury Trial
              in This Matter Withdrawal of the Reference is Warranted ................... 9

       C.     The Bankruptcy Court Does Not Have the Constitutional
              or Statutory Authority to Enter a Final Judgment in This Action ....... 14

              1.     The Bankruptcy Court Does Not Have the Constitutional
                     or Statutory Authority to Enter a Final Judgment on the
                     Fraudulent Transfer Claims ..................................................... 15

              2.     The Bankruptcy Court Does Not Have the Constitutional
                     or Statutory Authority to Enter a Final Judgment on the
                     Alter Ego Claim, the Unjust Enrichment Claim, and the
                     Conspiracy Claim ..................................................................... 17

       D.     Cause Exists for the Permissive and Immediate Withdrawal of the
              Reference in this Proceeding .............................................................. 18

       E.     Issues Arising Under CERCLA Require Mandatory Withdrawal of
              the Reference in this Proceeding ........................................................ 21

VI.    CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Am. Tel. & Tel. Co. v. Chateaugay Corp.*,
   88 B.R. 581 (S.D.N.Y. 1988) ........................................................................... 23

*Amoco Oil Co. v. Torcomian*,
   722 F.2d 1099 (3d Cir. 1983) ........................................................................... 11

*Beacon Theatres, Inc. v. Westover*,
   359 U.S. 500 (1959) ........................................................................................... 9

*Beard v. Braunstein*,
   914 F.2d 434 (3d Cir. 1990) ............................................................................. 9

*Bell v. Lehr*,
   2015 WL 4602895 (E.D. Cal. July 29, 2015) .................................................. 12

*Broyles v. Cantor Fitzgerald & Co.*,
   2016 WL 4054923 (M.D. La. July 26, 2016) ................................................... 12

*Carter Day Indus., Inc. v. U.S. Envtl. Prot. Agency (In re Combustion Equip. Assocs.,
   Inc.)*,
   67 B.R. 709 (S.D.N.Y. 1986) ........................................................................... 21

*City of New York v. Exxon Corp.*,
   932 F.2d 1020 (2d Cir. 1991) ........................................................................... 23

*Consol. SWINC Estate v. Ace USA, Inc. (In re Stone & Webster, Inc.)*,
   367 B.R. 523 (Bankr. D. Del. 2007) ................................................................. 17

*Curriden v. Middleton*,
   232 U.S. 633 (1914) ........................................................................................... 12

*Dairy Queen, Inc. v. Wood*,
   369 U.S. 469 (1962) ........................................................................................... 14

*Dastgheib v. Genentech, Inc.*,
   457 F. Supp. 2d 536 (E.D. Pa. 2006) ........................................................... 11-12

*DeGirolamo v. Devonshire Fund, LLC (In re Myers)*,
   2013 WL 6080270 (Bankr. N.D. Ohio Nov. 18, 2013) .................................... 18

*Envtl. Prot. Agency v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*,
   134 B.R. 188 (N.D. Tex. 1991) ......................................................................... 23

*Exec. Benefits Ins. Agency v. Arkison*,
   573 U.S. 25 (2014) ............................................................................................. 18

*Granfinanciera, S. A. v. Nordberg*,
   492 U.S. 33 (1989) ............................................................................................ *passim*

*Halper v. Halper*,
   164 F.3d 830 (3d Cir. 1999) ......................................................................................... 18

*Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*,
   107 B.R. 34 (D. Del. 1989) ............................................................................... 17,19, 21

*Holland America Insurance Co. v. Roy*,
   777 F.2d 992 (5th Cir. 1985) ................................................................................... 9, 19

*Homeland Stores, Inc. v. Burris (In re Homeland Stores, Inc.)*,
   204 B.R. 427 (D. Del. 1997) ....................................................................................... 21

*Iantosca v. Benistar Admin. Servs., Inc.*,
   843 F. Supp. 2d 148 (D. Mass. 2012) .......................................................................... 12

*In re Bellingham Insurance Agency, Inc.*,
   702 F.3d 553 (9th Cir. 2012) ....................................................................................... 16

*In re Broad St. Media LLC*,
   2017 WL 5624879 (Bankr. D.N.J. Nov. 20, 2017) ...................................................... 18

*In re Dana Corp.*,
   379 B.R. 449 (S.D.N.Y. 2007) .................................................................................... 23

*In re Davis*,
   2011 WL 5429095 (Bankr. W.D. Tenn. Oct. 5, 2011) ................................................. 16

*In re: FKF 3, LLC*,
   2016 WL 4540842 (S.D.N.Y. Aug. 30, 2016) .............................................................. 12

*In re G-I Holdings, Inc.*,
   380 F. Supp. 2d 469 (D.N.J. 2005) .............................................................................. 10

*In re G-I Holdings, Inc.*,
   580 B.R. 388 (Bankr. D.N.J. 2018) ............................................................................. 17

*In re Hassan*,
   375 B.R. 637 (Bankr. D. Kan. 2006) ........................................................................... 10

*In re Hassan*,
   376 B.R. 1 (Bankr. D. Kan. 2007) ............................................................................... 12

*In re Innovative Commc'n Corp.*,
   2014 WL 128204 (D.V.I. Jan. 14, 2014) ..................................................................... 16

*In re Ionosphere Clubs, Inc.*,
   922 F.2d 984 (2d Cir. 1990) ........................................................................................ 21

*In re Kollel Mateh Efraim, LLC,*
    406 B.R. 24 (Bankr. S.D.N.Y. 2009) ............................................................. 12

*In re Lands End Leasing, Inc.,*
    193 B.R. 426 (Bankr. D.N.J. 1996) ............................................................... 14

*In re Longview Power, LLC,*
    516 B.R. 282 (Bankr. D. Del. 2014) ................................................................ 6

*In re Marcus Hook Dev. Park, Inc.,*
    943 F.2d 261 (3d Cir. 1991) ........................................................................ 17

*In re Maxus Energy Corp.,*
    560 B.R. 111 (Bankr. D. Del. 2016) ................................................................ 6

*In re Maxus Energy Corp.,*
    571 B.R. 650 (Bankr. D. Del. 2017) .............................................................. 17

*In re Maxus Energy Corporation,*
    597 B.R. 235 (Bankr. D. Del. 2019) .............................................................. 13

*NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.),*
    203 B.R. 905 (D. Del 1996) .................................................................... 13, 17

*In re Net Pay Sols., Inc.,*
    2013 WL 5550207 (Bankr. M.D. Pa. Oct. 7, 2013) ....................................... 16

*In re Oakwood Homes Corp.,*
    378 B.R. 59 (Bankr. D. Del. 2007) ................................................................ 11

*In re Orion Pictures Corp.,*
    4 F.3d 1095 (2d Cir. 1993) .......................................................................... 17

*In re Pruitt,*
    910 F.2d 1160 (3d Cir. 1990) ...................................................................... 19

*In re Uni Marts,*
    2009 WL 1631821 (D. Del. June 11, 2009) .................................................. 13

*In re White Motor Corp.,*
    42 B.R. 693 (N.D. Ohio 1984) ..................................................................... 21

*Katchen v. Landy,*
    382 U.S. 323 (1966) .................................................................................... 16

*Kirschner v. Agoglia,*
    476 B.R. 75 (S.D.N.Y. 2012) ....................................................................... 16

*Lagenkamp v. Culp,*
    498 U.S. 42 (1990) ...................................................................................... 16

*Manley Truck Line, Inc. v. Mercantiel Bank of Kan. City*,
    106 B.R. 696 (D. Kan. 1989) ........................................................................................ 19

*Matter of Delaware & Hudson Ry Co.*,
    122 B.R. 887 (D. Del. 1991) ....................................................................................... 18

*Miller v. Sun Capital Partners, Inc.*,
    2016 WL 4941989 (D. Del. Sept. 15, 2016) (RGA) ................................................. 9, 12

*New Jersey Dep't of Envtl. Prot. v. Amerada Hess Corp.*,
    2018 WL 2317534 (D.N.J. May 22, 2018)..................................................................... 11

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50 (1982) ........................................................................................................ 14

*Paragon Litigation Trust v. Noble Corp., et al. (In re Paragon Offshore PLC)*,
    2019 WL 1112298 , Adv. Pro. No. 17-51882-CSS (Bankr. D. Del. March 11, 2019)........................ 16

*Penson Fin. Servs., Inc. v. O'Connell (In re Arbco Capital Mgmt., LLP)*,
    479 B.R. 254 (S.D.N.Y. 2012) .................................................................................... 16

*Repsol, S.A. v. Maxus Liquidating Trust*,
    C.A. No. 19-MC-00051-RGA ....................................................................................... 1, 7

*Repsol, S.A. v. Maxus Liquidating Trust*,
    C.A. No. 19-MC-00063-RGA ...................................................................................... 7, 18

*Robinson Mech. Contractors Inc. v. PTC Grp. Holdings Corp.*,
    2017 WL 4150858 (E.D. Mo. Sept. 19, 2017) ......................................................... 10-12

*S. Pac. Transp. Co. v. Voluntary Purchasing Grps. Inc.*,
    252 B.R. 373 (E.D. Tex. 2000)...................................................................................... 23

*Schoenthal v. Irving Trust Co.*,
    287 U.S. 92 (1932) ....................................................................................................... 15

*Simler v. Conner*,
    372 U.S. 221 (1963) ................................................................................................. 11-13

*Stern v. Marshall*,
    564 U.S. 462 (2011) ..............................................................................................*passim*

*Sullivan v. Maryland Cas. Co. (In re Ramex Int'l, Inc.)*,
    91 B.R. 313 (E.D. Pa. 1988) ........................................................................................ 17

*Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*,
    2005 WL 2405797 (N.D. Ill. Sept. 28, 2005) .............................................................. 10

*Tull v. United States*,
    481 U.S. 412 (1987) ............................................................................................10-12, 13

*United States ex rel. Petratos v. Genentech Inc.*,
    855 F.3d 481 (3d Cir. 2017) ........................................................................................... 13

*United States v. Delfasco, Inc.*,
    409 B.R. 704 (D. Del. 2009) .......................................................................................21-22

*United States v. Golden Acres, Inc.*,
    684 F. Supp. 96 (D. Del. 1988) ...................................................................................... 12

*United States v. Vacante*,
    2010 WL 2219405 (E.D. Cal. June 2, 2010) ................................................................. 12

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    467 B.R. 712 (S.D.N.Y. 2012) ....................................................................................... 16

*Wellness Int'l. Network, Ltd. v. Sharif*,
    135 S. Ct. 1932 (2015) ...................................................................................................... 8

**Statutes**

11 U.S.C. § 544 ...........................................................................................................6-7, 17

28 U.S.C. § 157 ................................................................................................................*passim*

28 U.S.C. § 1334 .......................................................................................................... 2, 7, 18

42 U.S.C. § 9601, *et seq*.......................................................................................................... 5

Pursuant to 28 U.S.C. §157(d), Rule 5011(a) of the Federal Rules of Bankruptcy Procedure (the "Federal Rules"), and Rule 5011-1 of the Local Rules (the "Local Rules") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Defendants Repsol, S.A., Repsol Exploración, S.A., Repsol USA Holdings Corp., Repsol E&P USA, Inc., Repsol Offshore E&P USA, Inc., Repsol E&P T&T Limited, and Repsol Services Company (collectively, "Repsol") respectfully move the United States District Court for the District of Delaware to withdraw the reference regarding the claims asserted by the Maxus Liquidating Trust ("MLT") against Repsol in its complaint ("Complaint") (A.D.I. 1).

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Maxus Energy Corporation and certain of its affiliates (collectively, the "Debtors") commenced their chapter 11 bankruptcy cases on June 17, 2016 (D.I. 1). The Debtors' Amended Chapter 11 Plan of Liquidation ("Plan") was confirmed by the Bankruptcy Court on May 22, 2017 (D.I. 1460). Pursuant to the Plan, the MLT became vested with the authority to pursue certain causes of action possessed by the Debtors.

The MLT filed the Complaint on June 14, 2018, asserting twenty-three causes of action against YPF S.A., YPFI International S.A, YPF Holdings Inc., CLH Holdings, Inc. (collectively, "YPF," and with Repsol, "Defendants") and Repsol in an effort to hold Defendants jointly and severally liable for all claims and liabilities asserted by the Debtors' creditors, potentially amounting to billions of dollars. On February 15, 2019, after the parties fully briefed the issues, the Bankruptcy Court issued a letter opinion (A.D.I. 107) and order (A.D.I. 108) denying the Defendants' motions to dismiss the Complaint pursuant to Bankruptcy Rule 7012 and Federal Rule 12(b). A week later, on February 22, 2019, after the parties fully briefed the issues, the Bankruptcy Court issued an opinion (A.D.I. 111) and order (A.D.I. 112) denying Repsol's motion to abstain from hearing the Complaint pursuant to 28 U.S.C. § 1334(c). Both of these orders are currently the subject of motions to permit interlocutory appeals before this Court.

On April 4, 2019, Repsol filed its answer (A.D.I. 139) to the Complaint.

## II.    SUMMARY OF ARGUMENTS

1.      Repsol moves this Court to withdraw the reference of this adversary proceeding from the Bankruptcy Court to this Court.  Because Repsol does not consent to the Bankruptcy Court conducting a jury trial in this matter, and does not consent to the Bankruptcy Court entering final orders or judgments in this matter, the Bankruptcy Court can neither conduct a jury trial, *see* 28 U.S.C. § 157(e), nor enter any final orders or judgments in this adversary proceeding.

2.      Furthermore, because Repsol has not filed a proof of claim against the bankruptcy estates of the Debtors and because each of the Claims represent a "private right" or is clearly a non-core matter, Repsol has a constitutional right under the Seventh Amendment to a jury trial for these Claims and the Bankruptcy Court lacks the constitutional and statutory authority to hold a jury trial and enter final judgments in this matter.

3.      Additionally, "cause" exists to permissively withdraw the reference and to immediately withdraw the reference to preserve judicial resources.

4.      Finally, mandatory withdrawal of the reference is necessary because the Complaint requires substantial and material consideration of federal law outside the Bankruptcy Code.

**III.   LOCAL RULE 7008-1 STATEMENT**

Pursuant to Bankruptcy Rule 7008 and Local Rule 7008-1, Repsol does not consent to entry of final orders or judgments by the Bankruptcy Court.

## IV.   STATEMENT OF FACTS

1.      On June 17, 2016, the Debtors commenced these chapter 11 cases.  The Debtors' debts arise almost exclusively from environmental contamination that was caused by the Debtors' chemicals business, which was sold and merged into Occidental Chemical Corporation ("OCC") in 1986, decades prior to YPF's acquisition of the Debtors and Repsol's acquisition of YPF.  In connection with the sale to OCC, the Debtors indemnified OCC for certain legacy environmental liabilities, including liabilities associated with a plant in Newark, New Jersey (the "Lister Site").  The Lister Site, along with the adjoining waterways and facilities operated by numerous other potentially responsible parties ("PRPs"), is the source of substantially all of the claims against the Debtors.  The claims associated with the Lister Site include a claim asserted in an amount of up to approximately $12 billion asserted by the United States under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.* ("CERCLA").  *See* Amended Disclosure Statement for the Amended Chapter 11 Plan of Liquidation Proposed by Maxus Energy Corporation, *et al.* and the Official Committee of Unsecured Creditors (D.I. 1232) at 9 n.5 ("The United States on behalf of the EPA and the NRD Trustees have filed the United States EPA/NRD Trustees Claim against the Debtors for approximately $11.9 billion relating to the Debtors' environmental liabilities, primarily related to the Diamond Alkali Site.").

On June 20, 2016, OCC removed and had transferred to the Bankruptcy Court, pursuant to Bankruptcy Rule 9027, a New Jersey state court lawsuit (the "New Jersey Lawsuit") to which the Debtors and Repsol, among others, were parties.  The allegations in the New Jersey Lawsuit generally mirror the Trust's allegations in the Complaint and relate to the various legacy environmental liabilities, including liabilities associated with the Lister Site.

After the New Jersey Lawsuit was transferred to the Bankruptcy Court, Repsol moved the Bankruptcy Court to abstain from hearing the New Jersey Lawsuit as it applied to Repsol, and remand those proceedings back to the New Jersey state court.  On November 15, 2016, the Bankruptcy Court granted Repsol's motion as set forth in its opinion (Adv. Proc. No. 16-51025-CSS; A.D.I. 42) and order (Adv. Proc. No. 16-51025-CSS; A.D.I. 43).   The Bankruptcy Court found that all of the claims in the New Jersey Lawsuit (including fraudulent transfer, alter ego liability, unjust enrichment, and civil conspiracy claims) were non-core, noting that "just because the Claims 'may provide economic benefit to the estate does not factor into the determination of whether a claim is core or non-core.'" *In re Maxus Energy Corp.*, 560 B.R. 111, 122 (Bankr. D. Del. 2016) (citing *In re Longview Power, LLC*, 516 B.R. 282, 293–94 (Bankr. D. Del. 2014)).

At no time did Repsol file any proofs of claim in the Debtors' bankruptcy cases. Repsol also did not file any requests for administrative expenses in the Debtors' bankruptcy cases.

The Debtors' Plan was confirmed by the Bankruptcy Court on May 22, 2017 (D.I. 1460).   Pursuant to the Plan, the MLT became vested with the authority to pursue causes of action held by the Debtors.

The MLT filed the Complaint on June 14, 2018, asserting twenty-three causes of action against the Defendants, seeking to hold Defendants jointly and severally liable for all claims and liabilities asserted by the Debtors' creditors, amounting to billions of dollars.  Count I of the Complaint seeks a declaratory judgment that the "Defendants are the alter egos of Maxus and Tierra" (the "Alter Ego Claim").  Compl. ¶¶ 212–232.  Counts II and III are claims for actual and constructive fraudulent transfers under 11 U.S.C. § 544 against the Defendants for

non-specific fraudulent transfers. *Id. ¶¶* 233–263. Counts IV through XI are claims asserted only against YPF entities and *not* Repsol. *Id. ¶¶* 264–355. Counts XII through XXI are claims for actual and constructive fraudulent transfers under 11 U.S.C. § 544 against Defendants (including Repsol) for specific transactions (with Counts II and III, the "Fraudulent Transfer Claims"). *Id. ¶¶* 356–472. Count XXII is a claim for unjust enrichment against Defendants based on the prior alleged fraudulent transfers (the "Unjust Enrichment Claim"). *Id. ¶¶* 473–476. And finally, Count XXIII is a claim for civil conspiracy against the Defendants (the "Conspiracy Claim," and with the Alter Ego Claim, the Fraudulent Transfer Claims and the Unjust Enrichment Claim, the "Claims"). *Id.* ¶¶ 477–485.

On February 15, 2019, after the parties fully briefed the issues, the Bankruptcy Court issued a letter opinion (A.D.I. 107) and order (A.D.I. 108) denying the Defendants' motions to dismiss the Complaint pursuant to Bankruptcy Rule 7012 and Federal Rule 12(b).

A week later, on February 22, 2019, after the parties fully briefed the issues, the Bankruptcy Court issued an opinion (A.D.I. 111) and order (A.D.I. 112) denying Repsol's motion to abstain from hearing the Complaint pursuant to 28 U.S.C. § 1334(c).

Both of the Bankruptcy Court's decisions, denying the motions to dismiss and the motion to abstain, are currently the subject of motions to permit interlocutory appeals before this Court. *See Repsol, S.A. v. Maxus Liquidating Trust*, C.A. No. 19-MC-00051-RGA (consolidated); *Repsol, S.A. v. Maxus Liquidating Trust*, C.A. No. 19-MC-00063-RGA.

As mentioned above, the Claims largely mirror the claims being litigated in the New Jersey Lawsuit that was remanded by the Bankruptcy Court to the New Jersey state court during the initial stage of the Debtors' bankruptcy cases and which are pending appeal (including an appeal filed by the MLT) in the Appellate Division of New Jersey's Superior Court.

## V.   ARGUMENTS AND AUTHORITIES

### A.   Standard for Withdrawing the Reference

As non-Article III courts, bankruptcy courts derive their jurisdiction from the district courts' referral of bankruptcy matters to them pursuant to 28 U.S.C. § 157(a).  Section 157(a) provides that "[e]ach district court may provide that . . . any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a); *Stern v. Marshall*, 564 U.S. 462, 473-76 (2011); *Wellness Int'l. Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939-40 (2015).

Under the "Amended Standing Order of Reference" of this Court, "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judge for this district," as this Court is authorized to provide pursuant to 28 U.S.C. § 157(a).  But because a bankruptcy court acquires jurisdiction only by reference from a district court, pursuant to section 157(d), the reference may be withdrawn from the Bankruptcy Court on two separate grounds:

> [(1)] The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  [(2)] The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

Here, there are three grounds for the Court to permissively withdraw the reference from the Bankruptcy Court along with one ground necessitating mandatory withdrawal of the reference: (1) Repsol has properly demanded a jury trial and does not consent to the Bankruptcy Court conducting a jury trial; (2); the Bankruptcy Court does not have the constitutional or statutory authority to enter a final judgment in this action; (3) cause for permissive withdrawal

exists under the factors set forth in *Holland America Insurance Co. v. Roy*, 777 F.2d 992, 999 (5th Cir. 1985); and (4) mandatory withdrawal of the reference is necessary because the Alter Ego Claim of the Complaint requires substantial and material consideration of federal environmental law.  Additionally, cause exists for the immediate withdrawal of the reference to preserve judicial resources and increase judicial efficiency.

> **B.**     **Because Repsol Has Demanded a Jury Trial and Does Not Consent to the Bankruptcy Court Conducting a Jury Trial in This Matter Withdrawal of the Reference is Warranted**

The MLT's Claims cannot be heard by the Bankruptcy Court at trial because Repsol has a constitutional right to a jury trial on them, has demanded a jury trial, and does not consent to a jury trial being conducted by the Bankruptcy Court.  Thus, Repsol's constitutional jury trial right necessitates withdrawal.

The Seventh Amendment states that "[i]n Suits in common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."  U.S. Const. amend. VII.  The Bankruptcy Court does not have the constitutional authority to hold a jury trial.  28 U.S.C. § 157(c); *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990) (stating the Seventh Amendment ban on *de novo* review of any fact found by the jury is incompatible with 28 U.S.C. § 157(c)(1) and concluding that "a bankruptcy court cannot conduct a jury trial in a non-core proceeding").  As recognized by this Court, "[a] court must, whenever possible, preserve a party's Seventh Amendment right to a jury trial."  *Miller v. Sun Capital Partners, Inc.*, 2016 WL 4941989, at *3 (D. Del. Sept. 15, 2016) (RGA) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959)).  Any "attempts to curtail a party's right to a jury trial must be 'scrutinized with the utmost care,' and should be rejected whenever legal rights and remedies are implicated." *Miller*, 2016 WL 4941989, at *3 (citations omitted).

Here, Repsol is entitled to a jury trial on all of the Claims in the Complaint

because they either are fraudulent conveyance claims or are state-law causes of action seeking money damages.   Turning first to the Fraudulent Transfer Claims, the Supreme Court's opinion in *Granfinanciera, S.A v. Nordberg* makes clear that a defendant that has not filed a claim against the bankruptcy estate, and that has been sued for the avoidance and recovery of a fraudulent transfer, has a constitutional right to a trial by jury on such claims.   *See Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 43 (1989).[1]   In *Granfinanciera*, the Supreme Court was faced with the question of "whether a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer."   *Id*. at 36.   The Supreme Court answered that such a person did have a jury trial right, holding "**that the Seventh Amendment entitles such a person to a trial by jury, notwithstanding Congress's designation of fraudulent conveyance actions as "core proceedings[.]**"   *Id*. (emphasis added).

Likewise, each of the other Claims in the Complaint, whether the Alter Ego Claim, the Unjust Enrichment Claim or the Civil Conspiracy Claim, are all subject to Repsol's constitutional right to a trial by jury.   *See In re G-I Holdings, Inc*., 380 F. Supp. 2d 469, 478 (D.N.J. 2005) (finding that an alter ego claim seeking money damages is subject to a right to a jury trial)*; Robinson Mech. Contractors Inc. v. PTC Grp. Holdings Corp*., 2017 WL 4150858, at *3 (E.D. Mo. Sept. 19, 2017) (same); *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp*., 2005 WL 2405797, at *4 (N.D. Ill. Sept. 28, 2005) (finding that an unjust enrichment claim is a private right that is subject to the Seventh Amendment); *In re Hassan*, 375 B.R. 637, 649-50

---

[1]     Because the binding precedent in *Granfinanciera* is that fraudulent conveyance actions brought against defendants who are not creditors have constitutional rights to jury trials, it is not necessary to conduct the two-step historical analysis to determine whether a party has a jury trial right for the claim as set forth by the Supreme Court in *Tull v. United States*, 481 U.S. 412, 417–18 (1987), and *Granfinanciera*, 492 U.S. at 49.   Such an analysis would simply be identical to the opinion in *Granfinanciera*.

(Bankr. D. Kan. 2006) (finding that a civil conspiracy claim is a private right that is subject to a right to a jury trial).

As noted above, in deciding whether a party has a jury trial right for a claim, courts perform a two-step analysis: "First, we compare the...action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera*, 492 U.S. at 42 (quoting *Tull v. United States*, 481 U.S. 412, 417–18 (1987)). The Supreme Court instructs that the second step is more important than the first. *Id.*; *see also Miller*, 2016 WL 4941989, at *7 ("Ultimately, this Court must weigh the claims against the relief sought, with more weight on the latter, and determine if Plaintiff has [a] right to a jury trial.") (quoting *In re Oakwood Homes Corp.*, 378 B.R. 59, 68 (Bankr. D. Del. 2007)).[2]

When determining whether the remedy sought is legal or equitable in nature for purposes of a party's right to a jury trial, this Court looks to federal law to determine this right, without regard to whether a particular state's law would find the action to be legal or equitable. *See Amoco Oil Co. v. Torcomian*, 722 F.2d 1099, 1103 (3d Cir. 1983) (holding that the state's characterization of a cause of action as equitable "is irrelevant" to the determination of a right to a jury trial); *New Jersey Dep't of Envtl. Prot. v. Amerada Hess Corp.*, 2018 WL 2317534, at *4 (D.N.J. May 22, 2018) (In determining a jury trial right, "[t]he State's characterization of the claim as legal or equitable is 'irrelevant.'"). This is because the right to a jury trial is procedural and must be decided in accordance with *federal*, not state, law. *See Simler v. Conner*, 372 U.S. 221, 222 (1963) (per curiam); *see also Oakwood Homes Corp.*, 378 B.R. at 65.

---

[2] This is especially the case here, because in the case of alter ego, unjust enrichment *and* civil conspiracy claims, most courts find the first factor to be indeterminate or otherwise unimportant. *See, e.g., Robinson Mech. Contractors*, 2017 WL 4150858, at *1 (concerning alter ego), *Dastgheib v. Genentech, Inc.*, 457 F. Supp. 2d 536, 543–44 (E.D. Pa. 2006) (concerning unjust enrichment).

After performing the *Granfinanciera* analysis, federal courts have found that alter ego claims seeking money damages are legal in nature. *See Robinson Mech.*, 2017 WL 4150858, at *2-3 (holding that while the first step of the *Granfinanciera* analysis is inconclusive, the remedy of money damages sought by an alter ego claims makes the claim a legal one under federal law); *U.S. v. Vacante*, 2010 WL 2219405, at *3-4 (E.D. Cal. June 2, 2010) (same); *Broyles v. Cantor Fitzgerald & Co.*, 2016 WL 4054923, at *1-2 (M.D. La. July 26, 2016) (same); *Iantosca v. Benistar Admin. Servs., Inc.*, 843 F. Supp. 2d 148, 153 (D. Mass. 2012) (same); *In re Kollel Mateh Efraim, LLC*, 406 B.R. 24, 27-30 (Bankr. S.D.N.Y. 2009) (same); *In re: FKF 3, LLC*, 2016 WL 4540842, at *17 (S.D.N.Y. Aug. 30, 2016) (same).[3]  Federal courts have also found that unjust enrichment claims, where there is no constructive trust being imposed, are actions at law.  *See Dastgheib v. Genentech, Inc.*, 457 F. Supp. 2d 536, 543-44 (E.D. Pa. 2006) (noting that unjust enrichment is akin to the assumpsit actions of 18th century England, which were indisputably law cases, and that where the claims are for money and where no trust or lien is sought are claims at law).  And federal courts also note that civil conspiracy claims for money damages are legal in nature.  *See Bell v. Lehr*, 2015 WL 4602895, at *2 (E.D. Cal. July 29, 2015) (citing *In re Hassan*, 376 B.R. 1, 20-21 (Bankr. D. Kan. 2007) (noting that "[m]any years ago, the Supreme Court [in *Curriden v. Middleton*, 232 U.S. 633, 635-36 (1914)] declared that a claim for damages based on an alleged conspiracy to defraud was a legal one")).  Thus, the Alter Ego Claim, the Unjust Enrichment Claim, and the Civil Conspiracy Claim are all

---

[3]     It is true that an over 30-year-old District of Delaware case found that "[p]iercing the corporate veil is an action that sounds in equity," and that there was no right to a jury trial.  *United States v. Golden Acres, Inc.*, 684 F. Supp. 96, 103 (D. Del. 1988).  But this case was decided prior to *Granfinanciera*; thus, this court did not perform the requisite two-step analysis.  Additionally, this case failed to recognize that the right to a jury trial is procedural and must be decided in accordance with federal, not state, law under binding Supreme Court precedent.  *See Simler v. Conner*, 372 U.S. at 222.

subject to Repsol's Seventh Amendment right to a trial by jury.[4]

Additionally, this result would not change even if this Court were to find that all or part of the Complaint is a core proceeding.[5]  The Bankruptcy Court is not authorized to hold a jury trial because Repsol has not consented, and will not consent, to its jurisdiction.  Absent the express consent of both parties, and a special designation by the district court, a bankruptcy court may not hold a jury trial, even in core proceedings.  28 U.S.C. § 157(e) (a bankruptcy judge may conduct a jury trial only if the bankruptcy judge is "specifically designated to exercise such jurisdiction by the district court and with the express consent of all the parties."); *see NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 908 (D. Del 1996); *see also See In re Uni Marts*, 2009 WL 1631821, at *2 (D. Del. June 11, 2009) (withdrawal is compelled where the defendant retains its Seventh Amendment right to trial by jury and the bankruptcy court has not been empowered, either by consent of the parties or special designation, to hold a jury trial on the matter).

Here, Repsol has not filed any proof of claim in the bankruptcy cases and it is

---

[4]    Although the Bankruptcy Court commented that Repsol is "likely not" to have a jury trial right with respect to the Alter Ego Claim, the Unjust Enrichment Claim, and the Civil Conspiracy Claim, *In re Maxus Energy Corporation*, 597 B.R. 235, 250 (Bankr. D. Del. 2019), the Bankruptcy Court did not make an ultimate ruling on this issue, and the comments were made without analyzing the causes of action in accordance with the Supreme Court precedent set forth in *Granfinanciera*, *Tull* and *Simler*.  *Id*. at 250 n.49-61.  This Court is not bound by the Bankruptcy Court's comments on this point, which Repsol respectfully submits are erroneous.  *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (noting that law of the case doctrine has no bearing on the revisiting of interlocutory orders).

[5]    As explained below, each of the Alter Ego, Unjust Enrichment, and Civil Conspiracy claims are clearly state law non-core claims.  The Fraudulent Transfer Claims, although statutorily core under 28 U.S.C. § 157(b)(2)(H), are "*Stern* claims" that may not be decided on a final basis by the Bankruptcy Court consistent with Article III of the Constitution.

entitled to a jury trial on each of the MLT's Claims.  *See Granfinanciera*, 492 U.S. at 58-59.[6]

      **C.**      **The Bankruptcy Court Does Not Have the Constitutional or
Statutory Authority to Enter a Final Judgment in This Action**

      Beyond not being able to conduct a jury trial for which Repsol has a constitutional

right, the Bankruptcy Court does not have constitutional authority to enter a final judgment in

this action.  The United States Supreme Court has made clear that where an action is effectively

a private action at law seeking damages to augment the bankruptcy estates, bankruptcy courts

cannot finally adjudicate such matters.  *Northern Pipeline Construction Co. v. Marathon Pipe

Line Co.*, 458 U.S. 50 (1982).  Here, the MLT's suit is fundamentally a private action at law

seeking damages to augment the bankruptcy estates.  It is no different than the contract action at

law seeking damages to augment the bankruptcy estate in *Marathon* which the Supreme Court

held could not be finally adjudicated by a bankruptcy court.  The Court's ruling in *Marathon*

formed the basis for its later rulings in the *Stern* and *Granfinanciera* cases.  Simply stated, the

Bankruptcy Court does not have the constitutional authority to enter a final judgment in this

action because the determination of the MLT's Claims is not necessary to resolve the claims-

allowance process.

      In *Stern v. Marshall*, the United States Supreme Court held that even though

bankruptcy courts are statutorily authorized to enter final judgment on certain types of

bankruptcy related claims, Article III of the Constitution prohibits bankruptcy courts from finally

adjudicating certain of those claims.  564 U.S. 462 (2011).  This is the case here with all of the

---

[6]      Additionally, "[w]here legal and equitable claims are brought in one case, however, a
party retains the right to a jury trial on the legal claims even where the legal issues are
characterized as incidental to the equitable."  *In re Lands End Leasing, Inc.*, 193 B.R.
426, 431 (Bankr. D.N.J. 1996) (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 n.8
(1962)).  This means that, at the very least, a few of the Claims in the Complaint will
need to be heard by a jury, as a number are clearly and unequivocally tied to the right to a
jury trial as actions at law.

Claims—the Alter Ego Claim, the Fraudulent Transfer Claims, the Unjust Enrichment Claim, and the Conspiracy Claim.

### 1.   The Bankruptcy Court Does Not Have the Constitutional or Statutory Authority to Enter a Final Judgment on the Fraudulent Transfer Claims

Starting first with the Fraudulent Transfer Claims, as held by the Supreme Court in *Granfinanciera*, "[t]here is no dispute that actions to recover preferential or fraudulent transfers were often brought at law in late 18[th]-century England." *Granfinanciera*, 492 U.S. at 43. Such causes of action that "'constitute no part of the proceedings in bankruptcy but concern controversies arising out of it'—are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id.* at 56 (*quoting Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94 (1932)). And as the Supreme Court stated in *Stern*:

> In *Granfinanciera* we rejected a bankruptcy trustee's argument that a fraudulent conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a bankruptcy proceeding fell within the "public rights" exception. We explained that, "[i]f a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, *then it must be adjudicated by an Article III court*." … *As a consequence, we concluded that fraudulent conveyance actions were "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions*."

*Stern,* 564 U.S. at 492 (second and third alterations added) (emphasis added) (citations omitted).

As such, bankruptcy courts do not have the constitutional authority to enter final judgments on avoidance claims asserted against defendants who have not asserted a claim against the bankruptcy estate. *See Granfinanciera*, 492 U.S. at 58-59 ("Because petitioners here, like the petitioner in *Schoenthal*, have not filed claims against the estate, respondent's fraudulent conveyance action does not arise 'as part of the process of allowance and disallowance of

claims.' Nor is that action integral to the restructuring of debtor-creditor relations."); *see also Lagenkamp v. Culp*, 498 U.S. 42, 45 (1990) ("If a party does not submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer."); *Katchen v. Landy*, 382 U.S. 323 (1966).[7]

Additionally, as the Ninth Circuit said in *In re Bellingham Insurance Agency, Inc.*, the conclusion that bankruptcy courts cannot enter final orders in fraudulent conveyance actions against non-creditors without their consent results "ineluctably" from the Supreme Court's holding in *Granfinanciera*.  702 F.3d 553 (9th Cir. 2012).  And district courts from the Second and Third Circuit have issued rulings on this question in line with the Ninth Circuit, concluding that bankruptcy courts cannot, consistent with Article III, enter final judgments in fraudulent transfer actions against non-creditors without their consent.  *See, e.g., In re Innovative Commc'n Corp.*, 2014 WL 128204, at *4 (D.V.I. Jan. 14, 2014); *In re Net Pay Sols., Inc.*, 2013 WL 5550207, at *3 (Bankr. M.D. Pa. Oct. 7, 2013); *Penson Fin. Servs., Inc. v. O'Connell (In re Arbco Capital Mgmt., LLP)*, 479 B.R. 254 (S.D.N.Y. 2012); *Kirschner v. Agoglia*, 476 B.R. 75 (S.D.N.Y. 2012); *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712 (S.D.N.Y. 2012).[8]

---

[7]     It is of no consequence that the Fraudulent Transfer Claims are being brought pursuant to section 544 of the Bankruptcy Code instead of section 548 of the Bankruptcy Code.  *See In re Davis*, 2011 WL 5429095, at *11 (Bankr. W.D. Tenn. Oct. 5, 2011).  "So long as a defendant has not subjected himself to the claims adjudication process by filing a proof of claim, the fraudulent conveyance action does not arise as part of the claims allowance process."  *Id*.  "It is a matter of private right that cannot constitutionally be determined without a jury if demanded nor by a non-Article III tribunal."  *Id*.

[8]     In *Paragon Litigation Trust v. Noble Corp., et al. (In re Paragon Offshore PLC)*, 2019 WL 1112298, Adv. Pro. No. 17-51882-CSS (Bankr. D. Del. March 11, 2019), the Bankruptcy Court held that it has the constitutional authority to enter a final order on a fraudulent transfer claim notwithstanding the Supreme Court's *Stern* decision and decisions from other courts holding otherwise.  The defendants in *Paragon* have filed an

**2.   The Bankruptcy Court Does Not Have the Constitutional or Statutory Authority to Enter a Final Judgment on the Alter Ego Claim, the Unjust Enrichment Claim, and the Conspiracy Claim**

Turning to the Alter Ego Claim, the Unjust Enrichment Claim, and the Conspiracy Claim, the Bankruptcy Court lacks the statutory authority to enter a final judgment for these Claims because they are all clearly non-core proceedings.  In deciding whether to withdraw the reference, a crucial factor the court should consider is "whether the claim is a core bankruptcy proceeding or whether it is non-core."  *In re NDEP Corp.*, 203 B.R. at 913; *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*, 107 B.R. 34, 39 (D. Del. 1989); *Sullivan v. Maryland Cas. Co. (In re Ramex Int'l, Inc.)*, 91 B.R. 313, 315 (E.D. Pa. 1988).

A proceeding is core under section 157(b)(1) only "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."  *In re G-I Holdings, Inc.*, 580 B.R. 388, 415-16 (Bankr. D.N.J. 2018) (*quoting In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991)).   Section 157(b)(2) further contains a non-exhaustive list of core proceedings.  "Courts generally find that state law causes of action brought by or on behalf of the debtor, which do not fall within the provisions of 28 U.S.C. § 157(b)(2)(B)-(N), are non-core matters."  *Consol. SWINC Estate v. Ace USA, Inc. (In re Stone & Webster, Inc.)*, 367 B.R. 523, 526 (Bankr. D. Del. 2007).

Here, the Alter Ego Claim, the Unjust Enrichment Claim, and the Conspiracy Claim do not fall within 28 U.S.C. § 157(b)(2)(B)-(N) and thus are plainly non-core.  *In re Maxus Energy Corp.*, 571 B.R. 650, 661 (Bankr. D. Del. 2017) ("The Third Circuit has long

appeal of the Bankruptcy Court's ruling.  For the reasons discussed in this Memorandum, Repsol respectfully submits that the Bankruptcy Court's decision in *Paragon*, finding that it has constitutional authority to enter a final order on a fraudulent transfer claim, is incorrect.

recognized that alter ego actions are often considered non-core, 'related to' proceedings."); *In re Broad St. Media LLC*, 2017 WL 5624879, at *6 (Bankr. D.N.J. Nov. 20, 2017) (unjust enrichment claims against non-debtor based on state law are non-core); *DeGirolamo v. Devonshire Fund, LLC (In re Myers)*, 2013 WL 6080270, at *7 (Bankr. N.D. Ohio Nov. 18, 2013) ("The weight of the authority supports the court's conclusion that civil conspiracy claims are noncore.").[9]   Additionally, all of these Claims arose prior to the bankruptcy cases and did not arise in connection with the bankruptcy cases. *Matter of Delaware & Hudson Ry Co*., 122 B.R. 887, 894 (D. Del. 1991) (concluding that the adversary was non-core and subject to permissive withdrawal because the "state law claims at issue . . . existed prior to and independent of the filing of the instant bankruptcy").

At bottom, the MLT's Claims are suits at common law brought to augment the bankruptcy estate rather than dealing with the hierarchical order of claims against a bankruptcy estate.   As such, the MLT's alleged avoidance Claims are not integral to the restructuring of debtor-creditor relations, see *Granfinanciera*, 492 U.S. at 58-59, and the Bankruptcy Court does not have constitutional authority to enter final orders or judgments in this adversary proceeding. Therefore, this Court should withdraw the reference for the entire Complaint as it relates to Repsol.

   **D.   Cause Exists for the Permissive and Immediate Withdrawal of the Reference in this Proceeding**

Additionally, the Court should withdraw the reference immediately because

_____

[9]   While the Bankruptcy Court held that these claims are core in its opinion (A.D.I. 111) denying the Defendants' motion to abstain from hearing the Complaint pursuant to 28 U.S.C. § 1334(c), the decision is clearly erroneous in light of the binding precedent of *Halper v. Halper*, 164 F.3d 830, 836-37 (3d Cir. 1999) and *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 38 (2014), among other cases.   As mentioned above, Repsol has requested leave to appeal this incorrect ruling.   *See Repsol, S.A. v. Maxus Liquidating Trust*, C.A. No. 19-MC-00063-RGA.

"cause" under 28 U.S.C. §157(d) exists for withdrawal.  Section 157(d) of title 28 permits withdrawal of "any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  Demand for jury trial has been recognized as cause for withdrawal of reference.  *Manley Truck Line, Inc. v. Mercantiel Bank of Kan. City*, 106 B.R. 696 (D. Kan. 1989).  In addition, the Third Circuit Court of Appeals "consider[s] the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process."  *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (adopting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)).  Permissive withdrawal for "cause" also includes considerations of judicial economy and the nature of the proceedings; that is, whether the proceedings are core or non-core.  *Hatzel & Buehler*, 107 B.R. at 39.

Judicial efficiency is the dominant factor in determining whether withdrawal is appropriate because unnecessary delay and costs can be avoided by a single proceeding in this Court in matters that are subject to *de novo* review.  Unless the reference is withdrawn immediately, judicial resources will be duplicated because the Bankruptcy Court cannot enter a final judgment in this matter.  Any decision by the Bankruptcy Court would be subject to district court's *de novo* review.  More importantly, the Bankruptcy Court cannot conduct the jury trial of this matter over Repsol's objection.  As a result, this matter would inevitably be determined by this Court.

If withdrawal of the reference is not granted now, dispositive motions would be inefficiently litigated for the first time before the Bankruptcy Court and then a second time before this Court on *de novo* review.  Even though a Bankruptcy Court can issue proposed findings of fact and conclusions of law for this Court's consideration on dispositive motions,

Bankruptcy Rule 9033(d) provides that this Court is authorized and required to "receive further evidence" to conduct a proper *de novo* review.  This results in recurrent litigation, burdening both the judiciary and the parties.  In contrast, immediate withdrawal ensures that this matter is litigated only once.

The delay and costs to the parties also favors immediate withdrawal.  This matter can only be resolved by one of two methods: (1) through dispositive motions; or (2) litigated before a jury.  Under either alternative, this matter must be heard and decided by this Court. Having the Bankruptcy Court keep the matter would only create delay and additional costs to the parties as they would have two rounds of litigation rather than a single proceeding before this Court.

Although the uniformity of bankruptcy administration probably does not favor withdrawal because withdraw entails removing an adversary proceeding from the Bankruptcy Court's oversight of other aspects of the Debtors' bankruptcy, this factor alone does not outweigh the fact that this Court, not the Bankruptcy Court, ultimately would decide this matter. For purposes of uniformity of the proceedings in this matter, immediate withdrawal is favored. As stated above, it is inefficient and duplicative to have two courts handling the same proceedings in a single matter.

Finally, there is no threat of forum shopping.  In addition to Repsol's right to a jury trial and to have this Court finally decide the claims in this matter, Repsol also seeks to have this action proceed before the only court that is able to finally decide the claims, thus avoiding judicial inefficiencies and additional costs and delay to the parties. Such motives do not constitute forum shopping.

For the reasons set forth above, the Court should immediately withdraw the

reference from the Bankruptcy Court for all Claims related to Repsol.

**E.      Issues Arising Under CERCLA Require Mandatory Withdrawal of the Reference in this Proceeding**

Finally, this Court is required to withdraw the reference on the Alter Ego Claim because the relief sought by the MLT "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

Withdrawal of the reference is mandatory where "substantial and material consideration of federal law outside the Bankruptcy Code" is required. *United States v. Delfasco, Inc.*, 409 B.R. 704, 707 (D. Del. 2009); *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities*, 107 B.R. 34, 38 (D. Del. 1989). "Substantial and material consideration" is considered to be where a bankruptcy court would need to meaningfully consider federal nonbankruptcy law rather than engage in its "simple application." *Homeland Stores, Inc. v. Burris (In re Homeland Stores, Inc.)*, 204 B.R. 427, 430 (D. Del. 1997).

Courts in this and other districts have further held that in determining whether withdrawal of the reference is mandatory, the court "need not evaluate the merits of the parties' positions," but rather, must merely determine that the resolution of the proceeding will necessitate substantial consideration of federal law. *Homeland Stores*, 204 B.R. at 430-31 (granting mandatory withdrawal because even though debtor only "asserted two common law claims," the "Trustees have interposed ERISA preemption as an affirmative defense to the contract claim."); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990)(citing *In re White Motor Corp.*, 42 B.R. 693, 700 (N.D. Ohio 1984).

CERCLA is a federal statute that is "the type of law . . . Congress had in mind when it enacted the mandatory withdrawal provision" of 28 U.S.C. § 157(d). *Carter Day Indus.,*

*Inc. v. U.S. Envtl. Prot. Agency (In re Combustion Equip. Assocs., Inc.)*, 67 B.R. 709, 713 (S.D.N.Y. 1986) (quotations omitted); *see also Defalsco, Inc.*, 409 B.R. at 707 (same).

Applying the foregoing standards here, the outcome of the damages portion of the Alter Ego Claim is not dependent upon the Bankruptcy Code.  Instead, through the Alter Ego Claim, the MLT seeks to impose on Repsol the direct claims of environmental creditors against the Debtors, consisting of, at the least, hundreds of millions of dollars of environmental liabilities, most of which is asserted in connection with CERCLA.  *See* Plan §§ I.A.207-08 ("United States Diamond Alkali Class 4 Claim and the United States Milwaukee Solvay Class 4 Claim, which shall collectively be Allowed in the amount of $145,696,361," and "that portion of the United States EP A/NRD Trustees Claim related to the Diamond Alkali Site in excess of the United States Diamond Alkali Class 4 Claim, which shall be Allowed in an amount not less than $61 million.").[10]  Determination of the validity and value of these claims – all of which relates to pollution that occurred years prior to Repsol acquiring an indirect ownership interest in the Debtors – will require consideration of CERCLA standards of liability.   Moreover, the determination of whether joint and several liability is available against the alleged alter egos of the Debtors for environmental damage and cleanup costs for which numerous other PRPs may be responsible, or whether some liability must instead be apportioned to such PRPs, will require substantial and material consideration of CERCLA sufficient to require withdrawal of the

---

[10]      The wherefore clause of the Alter Ego Claim in the Complaint (Count I) makes it clear that the MLT is attempting to impose these claims of the United States and other creditors' direct claims against Repsol.  *See* Complaint at 74 (seeking, among other things "(b) a judgment requiring the Defendants to pay and to reimburse the Liquidating Trust for all damages, if any (including, but not limited to, punitive damages), costs, expenses, and attorneys' fees *that Debtors' creditors have sustained*; (c) judgment declaring that the Defendants are jointly and severally liable for all losses (including, but not limited to, damages, costs, expenses, and attorneys' fees) *that the creditors of the Debtors may incur* or that may be imposed on such creditors in the future.") (emphasis added).

reference.[11]  *See, e.g.*, *In re Dana Corp.*, 379 B.R. 449, 457-458 (S.D.N.Y. 2007) (withdrawing reference to resolve questions of divisibility of harm under CERCLA); *S. Pac. Transp. Co. v. Voluntary Purchasing Grps. Inc.*, 252 B.R. 373, 384-85 (E.D. Tex. 2000) (withdrawing reference where case required evaluation and approval of settlement agreement resolving CERCLA claims); *Am. Tel. & Tel. Co. v. Chateaugay Corp.*, 88 B.R. 581, 587-88 (S.D.N.Y. 1988) (withdrawing reference where bankruptcy court would need to evaluate equitable allocation factors to contribution claims under section 113(f)); *Envtl. Prot. Agency v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.),* 134 B.R. 188, 193 (N.D. Tex. 1991) (withdrawing reference because "'determination[s] as to the amount of damages and the availability of affirmative defenses . . . are likely to require further interpretation of CERCLA.'" (quoting *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (alterations added))).

Accordingly, section 157(d) mandates that the reference be withdrawn so that this Court may make these determinations on the Alter Ego Claim in the first instance.

---

[11]    Repsol's ability to assert defenses to environmental alter ego claims in this proceeding was specifically contemplated and preserved by the confirmed Plan, which provides in relevant part:

> Notwithstanding anything to the contrary set forth in the Plan, the Plan Supplement or the Confirmation Order, nothing contained therein . . . shall have any precedential, preclusive or other effect against any of the Repsol Entities in any litigation, including with respect to any Cause of Action preserved under the Plan . . . and the rights, claims and defenses of the Repsol Entities and all other parties to any such litigation are specifically preserved.

Plan § XI.J.

## VI.     CONCLUSION

Repsol respectfully requests that this Court grant the motion to withdraw the reference and withdraw the order of reference for this adversary proceeding on the grounds that the Bankruptcy Court does not have constitutional authority to enter final orders in this matter, Repsol has demanded a jury trial to which it has a constitutional right, Repsol does not consent to a jury trial before the Bankruptcy Court, and the Complaint requires substantial and material consideration of federal environmental law.

Dated: June 7, 2019
        Wilmington, Delaware

Respectfully submitted,

/s/ Daniel B. Butz
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
Daniel B. Butz (No. 4227)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

- and -

WEIL, GOTSHAL & MANGES LLP
Edward Soto
1395 Brickell Avenue
Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159

Robert Lemons
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Repsol Defendants*

## CERTIFICATE OF SERVICE

I, Daniel B. Butz, certify that I am not less than 18 years of age, and that service of the foregoing *Repsol Defendants' Memorandum of Law in Support of Withdrawal of the Reference* was caused to be made on June 7, 2019, in the manner indicated upon the parties identified below:

Date:  June 7, 2019

_____/s/Daniel B. Butz_____
Daniel B. Butz (No. 4227)

**HAND DELIVERY**

Brian E. Farnan
Michael J. Farnan
Farnan LLP
919 North Market Street
12th Floor
Wilmington, DE  19801

Adam G. Landis
Matthew B. McGuire
Landis Rath & Cobb LLP
919 Market Street
Suite 1800
Wilmington, DE  19801

**BY FIRST CLASS MAIL**

J. Christopher Shore
White & Case LLP
1155 Avenue of the Americas
New York, NY  10036-2787

James F. Conlan
Jessica C. Knowles Boelter
Sidley Austin LLP
One South Dearborn Street
Chicago, IL  60603

John G. Hutchinson
Martin B. Jackson
John J. Kuster
Sidley Austin LLP
787 Seventh Avenue
New York, NY  10019

12857147