## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| MAXUS ENERGY CORPORATION, *et al.*, | ) Case No. 16-11501 (CSS) |
| Debtors. | ) Jointly Administered |

| | |
|---|---|
| MAXUS LIQUIDATING TRUST, | ) |
| Plaintiff, | ) Adversary Proceeding |
| v. | ) |
| YPF S.A., YPF INTERNATIONAL S.A., YPF | ) Adv. Proc. No. 18-50489 (CSS) |
| HOLDINGS, INC., CLH HOLDINGS, INC., | ) |
| REPSOL, S.A., REPSOL EXPLORACIÓN, S.A., | ) |
| REPSOL USA HOLDINGS CORP., REPSOL | ) |
| E&P USA, INC., REPSOL OFFSHORE E&P | ) |
| USA, INC., REPSOL E&P T&T LIMITED, and | ) |
| REPSOL SERVICES CO., | ) |
| Defendants. | ) |

| | |
|---|---|
| MAXUS LIQUIDATING TRUST, | ) C.A. No. 19-cv-1073-RGA |
| Plaintiff, | ) **Consolidated** |
| v. | ) |
| YPF S.A., *et al.*, | ) |
| Defendants. | ) |

## REPSOL DEFENDANTS' REPLY IN SUPPORT
## OF WITHDRAWAL OF THE REFERENCE

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
Robert J. Dehney
Curtis S. Miller
Daniel B. Butz
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 351-9412
Facsimile:  (302) 425-3080

WEIL, GOTSHAL & MANGES LLP
Edward Soto
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Counsel for the Repsol Defendants*

Dated: August 5, 2019

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    SUMMARY OF ARGUMENT ................................................................................... 1

II.   REPLY ....................................................................................................................... 3

    A.   The Trust's Arguments Alleging the Unavailability of Mandatory
Abstention Disregard the Plan and Ignore Binding Third Circuit
Precedent. ........................................................................................................... 3

    B.   The Trust's Arguments Concerning Law of the Case Are Incorrect
and Ignore Cases Cited by Repsol ...................................................................... 7

    C.   Because Repsol Is Entitled to a Jury Trial, the Claims Are *Stern*
Claims and Should Be Withdrawn Now Because Otherwise Courts
Would Have to Hear It Twice ............................................................................. 9

III.  CONCLUSION .......................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bandai Am. Inc. v. Bally Midway Mfg. Co.*,
  775 F.2d 70 (3d Cir. 1985), *cert. denied*, 475 U.S. 1047 (1986)          6-7

*Diaz v. Indian Head, Inc.*,
  686 F.2d 558 (7th Cir. 1982)                                                7

*In re Baldwin-United Corp.*,
  57 B.R. 751 (S.D. Ohio 1985)                                               11

*In re Mahlmann*,
  149 B.R. 866 (N.D. Ill. 1993)                                              11

*In re Maxus Energy Corporation*,
  597 B.R. 235 (Bankr. D. Del. 2019)                                          7

*In re Sevko, Inc.*,
  143 B.R. 114 (N.D. Ill. 1992)                                              11

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982)                                                          9

*Stern v. Marshall*,
  564 U.S. 462 (2011)                                                      2, 8-9

*Transcon. Refrigerated Lines, Inc. ex rel. Young v. New Prime, Inc.*,
  No. 1:13-CV-2163, 2013 WL 5937963 (M.D. Pa. Nov. 5, 2013)                11-12

*United States ex rel. Petratos v. Genentech Inc.*,
  855 F.3d 481 (3d Cir. 2017)                                                 7

*United States v. Fine*,
  243 F. Supp. 785 (S.D.N.Y. 1965)                                            8

*United States v. Int'l Bldg. Co.*,
  345 U.S. 502 (1953)                                                         6

**Rules and Statutes**

28 U.S.C. § 157(d)                                                            1

Fed. R. Bankr. P. 9033(d)                                                    10

Fed. R. Civ. P. 54(b)                                                         8

## I.   SUMMARY OF ARGUMENT

1.      In an attempt to distract from the serious constitutional issues raised by Repsol[1],

the Consolidated Opposition of Maxus Liquidating Trust to Defendants' Motions for Withdrawal

of the Reference (D.I. 5) (the "Answering Brief") advances legal arguments wholly unsupported

by statutes or case law while misapprehending the prior history of the Debtors' bankruptcy cases.

Repsol established in its Opening Brief that withdrawal of the reference is warranted under these

facts and that this Court is the appropriate tribunal to oversee this adversary proceeding.

2.      To overcome this, the MLT claims that mandatory abstention is unavailable

because Repsol—an entity that was not a creditor of the Debtors—is somehow bound by the

various environmental settlements entered into by the Debtors in connection with the Plan.  This

is incorrect and would set dangerous new precedent.   The MLT unabashedly omits from its

Answering Brief that the Debtors (as predecessors to the MLT) previously argued that Repsol

had no standing to object to the Plan as it was neither a creditor nor equity holder of the Debtors.

To now argue that Repsol is bound by settlements to which it was not a party, had no interest in,

and had no standing to contest is meritless.   Moreover, the Debtors' settlement of environmental

claims neither binds Repsol—because Repsol was not a party to such settlements and had its

rights specifically preserved by the Plan—nor changes the fact that the determination of damages

on Count I of the Complaint will require substantive consideration of CERCLA, which the MLT

does not dispute in its Answering Brief.  Thus, mandatory withdrawal of the reference is required

by section 157(d) of Title 28.

---

[1]      Terms used but not otherwise defined herein shall have the meanings ascribed to them in
the *Repsol Defendants' Motion for Withdrawal of the Reference*, dated June 7, 2019
(D.I. 1 in C.A. No. 19-1073-RGA and A.D.I. 181 in Adv. Proc. No. 18-50489-CSS) (the
"Motion") and the *Repsol Defendants' Memorandum of Law in Support of Withdrawal of
the Reference*, dated June 7, 2019 (D.I. 1 in C.A. No. 19-1073-RGA and A.D.I. 182 in
Adv. Proc. No. 18-50489-CSS) (the "Opening Brief").

3.      The MLT next claims that the Bankruptcy Court's prior decisions bind this Court under the law of the case doctrine.  This is also incorrect.  The Third Circuit has made clear that law of the case doctrine has *no bearing* on the revisiting of determinations made in interlocutory orders.  Not only does the MLT fail to address this binding precedent cited by Repsol, but the MLT also fails to cite any cases of its own to support its assertion that the law of the case doctrine applies here.  Thus, withdrawal of the reference is not foreclosed by any of the Bankruptcy Court's prior decisions.

4.      The MLT next contends that Repsol's right to a jury trial does not require that the reference be withdrawn now.  This argument misunderstands the interplay between the Supreme Court's decisions in *Stern* and *Granfinanciera*. The primary basis for Repsol's request to withdraw the reference *now* is based upon the fact that that the Bankruptcy Court is both statutorily incapable of empaneling a jury and conducting a jury trial *as well as* constitutionally incapable of entering final orders on *any* of the Counts set forth in the Complaint.  Because of this, the Bankruptcy Court will be unable to rule on any substantive motions on a final basis from this point forward.  It is thus in the best interest of all of the parties, as well as in the interests of judicial economy, to have this proceeding litigated once, in front of a court of competent jurisdiction—this Court.

5.      Finally, although the MLT claims otherwise, the Motion is clearly timely.  The filing of the Motion prior to the filing of an answer would have been imprudent and inefficient.  If the Bankruptcy Court had disposed of the Complaint via dismissal or abstention in the very early stages of the adversary proceeding, this Court would not have had to be burdened with any substantive matters.  However, now that this proceeding is beyond the initial preliminary stages of litigation, the litigation will necessarily have to be decided on the merits—merits which the

Bankruptcy Court is constitutionally and statutorily incapable of considering.  Additionally, the MLT is unable to claim that withdrawal of the reference now would prejudice it in any way, particularly when discovery will not be completed until May 29, 2020 under the current schedule and no trial dates have been set.  Thus, now is the time for this Court to withdraw the reference, and Repsol's motion is not too late.

## II.   REPLY

### A.   The Trust's Arguments Alleging the Unavailability of Mandatory Abstention Disregard the Plan and Ignore Binding Third Circuit Precedent.

Mandatory abstention on the Alter Ego Claim is warranted because resolution of the claim will require "substantial and material consideration of federal law outside the Bankruptcy Code."  Notably, the MLT does not refute that it seeks to impose on Repsol the direct claims of environmental creditors against the Debtors, consisting of, at the least, hundreds of millions of dollars of environmental liabilities, most of which is asserted under CERCLA. Instead, the MLT takes a different tack—it claims that Repsol's right to dispute these environmental claims has been estopped or has otherwise lapsed.  This assertion is baseless and contradicted by both the relevant facts and the applicable law.

First, the plain language of section XI.J. of the Plan preserved Repsol's rights to dispute the environmental claims the MLT asserts were settled in the Plan.  As specifically noted in its Opening Brief, Repsol negotiated the following language which was added to the confirmed Plan:

> *Notwithstanding anything to the contrary set forth in the Plan, the Plan Supplement or the Confirmation Order, nothing contained therein* . . . *shall have any precedential, preclusive or other effect against any of the Repsol Entities in any litigation, including with respect to any Cause of Action preserved under the Plan* . . . and the rights, claims and defenses of the Repsol Entities and all other parties to any such litigation are specifically preserved.

Plan § XI.J. (emphasis added).  This language was added to the Plan two days before the hearing to consider confirmation of the Plan, *see Notice of Filing of Blackline of Changed Pages in Amended Plan*, (Case No. 16-11501-CSS; D.I. 1452) at 16, in settlement of Repsol's objection to the Plan as noted at the confirmation hearing, *see* Transcript of May 22, 2017 Hearing, *In re Maxus Energy Corporation et al.*, Case No. 16-11501-CSS, D.I. 1475 at 12:24-25, 16:22-17:10.  The plain language was added specifically to preserve Repsol's rights in any then-pending and, any future litigation, like this one.[2]

It is impossible to read the provision in section XI.J. (or section XV.P.) of the Plan and come to the conclusion that it does not fully preserve Repsol's rights to challenge the environmental claims.  This litigation is undeniably one of the "Cause[s] of Action preserved under the Plan."  To the extent that the amount of damages asserted against Repsol is to be measured by the quantum of claims asserted against the Debtors, Repsol has the constitutional right to contest such claims.  As explained in the Opening Brief, determination of the validity and value of these claims—all of which relate to pollution that occurred years prior to Repsol acquiring an indirect ownership interest in the Debtors—will require consideration of CERCLA standards of liability.  Moreover, the determination of whether joint and several liability is available against the alleged alter egos of the Debtors for environmental damage and cleanup costs for which numerous other PRPs may be responsible, or whether some liability must instead

---

[2]    Another of the resolutions of various objections to the Plan was section XV.P of the Plan entitled "No Impact on Other Litigation," which provides:

> Neither the allowance or disallowance of any Claim against any Debtor in these Chapter 11 Cases, nor the allowed amount of any Claim, shall have any precedential, preclusive or other effect, including as a purported measure of any valuation or damages, against any person or entity in any litigation, including in any Causes of Action preserved under the Plan (including the YPF Causes of Action, the Repsol Causes of Action and the Preserved Contribution Claims).

Plan § XV.P.  The plain language of this provision *also* preserves Repsol's ability to challenge the environmental claims.

be apportioned to such PRPs, will require substantial and material consideration of CERCLA sufficient to require withdrawal of the reference.

Additionally, the MLT's assertion in its Answering Brief that Repsol should have objected to the settlements embodied in the Plan is baseless. At the time of the confirmation of the Plan, Repsol was neither a creditor nor an equity holder of the Debtors. As such, Repsol was an unrelated third party to those settlements and to most of the confirmation process. Repsol *only* participated in connection with confirmation of the Plan to protect and preserve its rights in current and potential future litigation, nothing more.[3] If Repsol had attempted to raise any objections to the settlements, the Debtors (as the predecessors in interest to the MLT) would have certainly contested Repsol's standing to raise such objections. In fact, the Debtors did raise this standing objection. *See Plan Proponents' Memorandum of Law in Support of Confirmation of Amended Chapter 11 Plan of Liquidation Proposed by Maxus Energy Corporation, et al. and the Official Committee of Unsecured Creditors and Omnibus Reply to Objections Thereto* (Case No. 16-11501-CSS; D.I. 1433) at ¶ 91 ("Notably, Repsol is neither a creditor nor an equity holder of the Debtors, and thus has no standing to prosecute such an objection to Confirmation of the Plan."). For the MLT to now argue now that Repsol should have objected to the settlements at the confirmation hearing while the Debtors were arguing at the confirmation hearing that Repsol did not have standing is nothing more than gamesmanship and should be rejected.

---

[3]     In fact, as noted in its Opening Brief, when Repsol was involuntarily wrangled into the bankruptcy cases by the removal and transfer of the New Jersey Lawsuit to the Bankruptcy Court—claims in which Repsol had prevailed on dismissal and summary judgment—Repsol immediately sought abstention and remand from the Bankruptcy Court, which was granted as set forth in the Bankruptcy Court's opinion (Adv. Proc. No. 16-51025-CSS; A.D.I. 42) and order (Adv. Proc. No. 16-51025-CSS; A.D.I. 43).

Moreover, the notion that a non-creditor and non-party-in-interest, such as Repsol, should have filed objections to each and every claim asserted against the Debtors' estates and to each settlement proposed by the Debtors of those claims is nonsensical and unprecedented.  Under the MLT's theory, Repsol would have been forced to object to each claim and settlement on the chance that some party in the future—on the Debtors' behalf—might assert that Repsol was liable for such claims as the Debtors' alter ego.[4]  Such a process would unduly burden courts and parties with unnecessary expenditures of time and money.  The Debtors' settlements with their environmental creditors—made when the Debtors had no ability to even pay the claims—only served to fix the relative positions of the Debtors' creditors in terms of their recoveries; nothing more. *None* of the cases cited by the MLT stand for the proposition that the amount of a claim agreed to in a settlement between a debtor and a claimant can be unilaterally imposed upon a third party that is a stranger to that settlement.

Rather, Third Circuit precedent supports that Repsol still possesses the right to contest these claims in the context of the Alter Ego Claim.  When it comes to the effect of such settlements on third parties, the Third Circuit has stated that, "[s]ettlement agreements involve claim preclusion [res judicata], not issue preclusion [collateral estoppel]." *Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 74 (3d Cir. 1985), *cert. denied*, 475 U.S. 1047 (1986) (citing *United States v. Int'l Bldg. Co.,* 345 U.S. 502, 505-06 (1953)).  Although  it is true that "[i]n subsequent litigation between the parties to a settlement agreement resulting in a consent decree, litigation of issues resolved in the agreement is precluded," *id.* (citations omitted), the Third Circuit found that this "*rule has no application*, however, to [a party], which was *not a*

---

[4]     As explained in the Opening Brief, the only known alter ego claim against Repsol at the time of confirmation of the Plan had been asserted by OCC against Repsol in the New Jersey Lawsuit; however, even this claim was not at issue during confirmation since this alter ego claim had been dismissed by the New Jersey court prior to the filing of the Debtors' bankruptcy cases.

*party to the settlement agreement*" and "was *expressly excluded from … agreement.*"  *See id.* at 75 (emphasis added).

Accordingly, the Debtors' settlements with creditors do not prevent Repsol from challenging any of the underlying environmental claims to the extent the Trust seeks to impose liability on them against Repsol based on purported alter ego.  Although the environmental settlements set forth in the Plan have the same preclusive force as a judicial decree (as noted in the cases cited by the MLT), the second element of *res judicata* is not satisfied because Repsol was not a party to the settlement agreement.  *See* 775 F.2d at 74.  Therefore, Repsol has no impediment to challenging the environmental claims being asserted against it in connection with the Alter Ego Claim in Count I of the Complaint.  Thus, mandatory abstention is appropriate for the reasons set forth in the Opening Brief.

**B.    The Trust's Arguments Concerning Law of the Case Are Incorrect and Ignore Cases Cited by Repsol**

The MLT's next argument is that this Court is unable to revisit the Bankruptcy Court's findings regarding the "core" or "non-core" nature of the Counts of the Complaint due to prior interlocutory orders of the Bankruptcy Court.  This assertion is unsupported by the law and common sense.

The Bankruptcy Court's prior decisions do not bind this Court under the law of the case doctrine.  Although the Bankruptcy Court ruled that the Alter Ego Claim, the Unjust Enrichment Claim, and the Civil Conspiracy Claim were core claims in a prior opinion, *see In re Maxus Energy Corporation*, 597 B.R. 235, 243-244 (Bankr. D. Del. 2019), the Bankruptcy Court did not make an ultimate, final ruling on this (or any other) issue.  As previously discussed in Repsol's Opening Brief, the law of the case doctrine is inapplicable before final judgment.  *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (noting that

law of the case doctrine has no bearing on the revisiting of interlocutory orders); *Diaz v. Indian Head, Inc*., 686 F.2d 558, 562 (7th Cir. 1982) (holding that a judge's interlocutory decisions can be reviewed and repealed at any time).

Even if the law of the case doctrine were somehow applicable, this Court could still rule differently because a court is always free to reconsider and reverse itself on a prior ruling if such ruling was erroneous.  *See United States v. Fine*, 243 F. Supp. 785, 787 (S.D.N.Y. 1965) ("When it has been brought to the attention of a court that it was in error. . . the court has an obligation to change its decision."); *see* Fed. R. Civ. P. 54(b) (providing that all decisions are "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.").  Here, the argument for not applying the law of the case doctrine is even stronger since it was the Bankruptcy Court, not this Court, that ruled that the Alter Ego Claim, the Unjust Enrichment Claim, and the Civil Conspiracy Claim were core claims, and applications to withdraw the reference are made in the first instance to this Court. Additionally, as detailed in the Opening Brief, because the Bankruptcy Court made its findings regarding the "core" or "non-core" nature of the Counts of the Complaint without analyzing the causes of action in accordance with the Supreme Court precedent set forth in the *Granfinanciera*, *Tull* and *Simler* cases, this Court should reconsider the Bankruptcy Court's interlocutory rulings on this point, which Repsol respectfully submits are clearly erroneous.[5]  Thus, law of the case doctrine is no bar to this Court's withdrawal of the reference.

---

[5]    Indeed, Repsol sought leave to appeal these very issues, which is currently pending before this Court.  *See Repsol Defendants' Motion for Leave to Appeal*, dated March 12, 2019, C.A. No. 19-mc-63-RGA (D.I. 1).

### C.   Because Repsol Is Entitled to a Jury Trial, the Claims Are *Stern* Claims and Should Be Withdrawn Now Because Otherwise Courts Would Have to Hear It Twice

The MLT's next argument is that Repsol's right to a jury trial does not mean that the reference should be withdrawn now.  This argument misunderstands the interplay between the Supreme Court's decisions in *Stern* and *Granfinanciera*.  Repsol's request to withdraw the reference *now* is based upon the fact that that the Bankruptcy Court is not only constitutionally incapable of entering final orders on any of the Counts set forth in the Complaint but is also statutorily incapable of empaneling a jury and conducting a jury trial.  Because of this, the Bankruptcy Court will be unable to rule on any substantive motions from this point forward on a final basis and will be unable to see the case through to trial.[6]

The Supreme Court has made clear that where an action is effectively a private action at law seeking damages to augment the bankruptcy estates, bankruptcy courts cannot finally adjudicate such matters.  *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).  Here, the MLT's suit is fundamentally a private action at law seeking damages to augment the Debtors' estates.  It is no different than the contract action at law seeking damages to augment the bankruptcy estate in *Marathon* which the Supreme Court held could not be finally adjudicated by a bankruptcy court.  Simply stated, the Bankruptcy Court does not have the constitutional authority to enter a final judgment in this action because the determination of the MLT's Claims is not necessary to resolve the claims-allowance process.  In *Stern v. Marshall*, the United States Supreme Court held that even though bankruptcy courts are

---

[6]   Repsol recognizes that it is this Court's historical practice to leave pre-trial matters to the Bankruptcy Court even in situations where a party may have a right to a jury trial or the Bankruptcy Court lacks the constitutional authority to enter final orders.  Repsol respectfully submits that in a unique situation like this, where not only is mandatory withdrawal warranted but also the Bankruptcy Court is lacking the constitutional and statutory authority to enter final orders or conduct a trial, the Court should withdraw the reference immediately.

statutorily authorized to enter final judgment on certain types of bankruptcy related claims, Article III of the Constitution prohibits bankruptcy courts from finally adjudicating certain of those claims. 564 U.S. 462 (2011). This is the case here with all of the Claims—the Alter Ego Claim, the Fraudulent Transfer Claims, the Unjust Enrichment Claim, and the Conspiracy Claim.

If withdrawal of the reference is not granted now, dispositive motions would be inefficiently litigated for the first time before the Bankruptcy Court, and then a second time before this Court on *de novo* review. Even though a Bankruptcy Court can issue proposed findings of fact and conclusions of law for this Court's consideration on dispositive motions, Bankruptcy Rule 9033(d) provides that this Court is authorized and required to "receive further evidence" to conduct a proper *de novo* review. This results in recurrent litigation, burdening both the judiciary and the parties. In contrast, immediate withdrawal ensures that this matter is litigated only once.

The delay and costs to the parties also favors immediate withdrawal. This matter can only be resolved by one of two methods: (1) through dispositive motions; or (2) trial before a jury. Under either scenario, this matter must be heard and decided by this Court. Having the Bankruptcy Court keep the matter would only create delay and additional costs to the parties as they would have two rounds of litigation rather than a single proceeding before this Court.

It is thus in the best interest of all of the parties, as well as in the interests of judicial economy, to have this proceeding litigated once, in front of a court of competent jurisdiction—namely this Court.

### D.    The Motion Is Timely.

Finally, the MLT is incorrect when it asserts that the Motion is untimely. In determining whether a motion to withdraw reference is timely, courts consider whether a finding of timeliness would cause prejudice to the other party after reviewing the facts. Prejudice is the

overarching concern for courts when conducting a timeliness analysis.  Putting aside for the moment that holding the Motion to be untimely would cause Repsol to unreasonably forfeit its Seventh Amendment right to a jury trial, the Motion should be considered timely as it was filed at the first reasonable opportunity given the facts of this proceeding and would cause the MLT no undue prejudice.  Filing the Motion prior to a decision on the motions to dismiss and abstain, as the MLT suggests Repsol should have done, would have been imprudent and inefficient.  Thus, the analysis should not be conducted from the moment the Complaint was filed or even when Repsol knew of grounds for removal, but rather when the Bankruptcy Court denied the motions to abstain and dismiss.  As various courts have allowed delays of up to three years, a delay of four months following the denial of the motions to dismiss and abstain must be considered timely.[7]

The threshold question in a timeliness analysis is when the party became aware of the grounds for removal.  *See In re Mahlmann*, 149 B.R. 866, 869 (N.D. Ill. 1993).  In addition, as the court in *In re Baldwin-United Corp.* noted, the underlying proceedings are also an important consideration.  57 B.R. 751, 753 (S.D. Ohio 1985).  Thus, a change of circumstances during the delay between attaining knowledge of the grounds and filing of the motion to withdraw reference influences this factor.  *See Transcon. Refrigerated Lines, Inc. ex rel. Young v. New Prime, Inc.*, 2013 WL 5937963, at *4 (M.D. Pa. Nov. 5, 2013).

For instance, in *In re Sevko*, the court noted that while the moving party was aware of the grounds for withdrawal earlier in the case, such knowledge did not weigh against a

---

[7]    Additionally, counsel for Repsol informed the Bankruptcy Court and counsel for the MLT months ago that Repsol would move for withdrawal of the reference once the Bankruptcy Court had ruled on the pending motions for abstention and removal.  The MLT did not voice any disapproval of Repsol's position at that time.  S*ee* Transcript of April 10, 2019 Hearing, *In re Maxus Energy Corporation et al.*, Adv. Proc. No. 18-50489-CSS, A.D.I. 150 at 19:12-15.

finding of timeliness because the party was awaiting a decision on a motion to dismiss. *See In re Sevko, Inc.,* 143 B.R. 114, 116 (N.D. Ill. 1992). Similarly, in *Transcontinental Refrigerated Lines*, a motion to withdraw was deemed timely *three years* after the commencement of the case, but only two months after the bankruptcy court had issued a determination on subject matter jurisdiction. The court noted that a motion to withdraw reference filed before such a determination could have resulted in parallel and inconsistent litigation. *Transcontinental*, 2013 WL 5937963, at *4. Courts in this district have withdrawn the reference even where the proceeding had been pending for over two years, *In re American Classic Voyages Co*., 337 B.R. 509, 512 (D. Del. 2006), or where the request was made within *two months* prior to trial, *In re Winstar Communications*, 321 B.R. 761, 764 (D. Del. 2005).

Finally, courts in this district have noted that the main purpose of the timeliness provision is "to prevent unnecessary delay and stalling tactics." *In re AgFeed USA, LLC*, 565 B.R. 556, 565 (D. Del. 2016) (quotations omitted). In this district there is no *per se* rule at which a motion to withdraw the reference becomes untimely—the inquiry instead depends on the facts and circumstances of the case. In this instance, there can be no prejudice in allowing the withdrawal to occur now. The current *Case Management Plan and Scheduling Order* (Adv. Proc. No. 18-50489-CSS; A.D.I. 151) (the "Scheduling Order"), entered on April 11, 2019 by the Bankruptcy Court, does not have discovery ending until May 29, 2020 and only schedules "a status conference on August 19, 2020 to set a pre-trial schedule." *Id.* at ¶¶ 3(c)(v), 3(e). In addition to not specifying any pre-trial or trial dates, the Scheduling Order *specifically reserves* "the issue of whether the trial of this matter will take place in this Court." *Id.* By its plain language, the Bankruptcy Court's own Scheduling Order, entered less than three months before

the filing of Repsol's Motion, contemplates the possibility of withdrawal of the reference of the matter.

Accordingly, the filing of this Motion, a mere four months after the denial of the motion to dismiss and well over a year until trial, should be considered timely.

## III.   CONCLUSION

For the reasons set forth above and in the Opening Brief, Repsol respectfully requests that this Court grant the Motion and withdraw the order of reference for this adversary proceeding on the grounds that the Bankruptcy Court does not have constitutional authority to enter final orders in this matter, Repsol has demanded a jury trial to which it has a constitutional right, Repsol does not consent to a jury trial before the Bankruptcy Court, and the Complaint requires substantial and material consideration of federal environmental law.

Dated: August 5, 2019
         Wilmington, Delaware

Respectfully submitted,

*/s/ Daniel B. Butz*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Robert J. Dehney (No. 3578)
Curtis S. Miller (No. 4583)
Daniel B. Butz (No. 4227)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*- and -*

WEIL, GOTSHAL & MANGES LLP
Edward Soto
1395 Brickell Avenue
Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159

*Attorneys for Repsol Defendants*

12989891.7